## SARAH H. RUSLING

### *v.*

## GERSHOM RUSLING'S EXECUTORS.

A husband received $1,000 from his wife to invest for her, and paid her the interest thereon for the first year. By his will and verbal admissions he recognized his indebtedness to her. By a subsequent will he provided for the payment of all his just debts, "if any," and gave her $2,000, payable in one year after his death, and the interest on $4,000 during her lifetime, and stipulated that these gifts should be in lieu of her dower "or any other claim she may have against my estate."—*Held*, (1) that the relation of the testator to his wife was that of a trustee; (2) that the statute of limitations did not run against her; (3) that the liability was not discharged by her general statements as to the motive of the transaction, or as to her having released her husband from liability; (4) that the testamentary gifts, having been accepted by her, the claim was thereby satisfied.

---

*Mr. Isaac R. Wilson* and *Mr. C. A. Skillman,* for complainant.

*Mr. J. F. Rusling* and *Mr. B. Gummere,* for defendants.

BIRD, V. C.

Mrs. Rusling, the complainant, is the widow of Gershom Rusling, who died in 1881, leaving a last will, in which the defendants were named as executors. Mrs. Rusling brings this suit to recover $1,000, and the interest thereon, which $1,000 she alleges she gave to her husband in May, 1863, to invest for her.

I will set forth the principal facts. The testator married Mrs. Rusling in 1861. About the 1st of May, 1863, Mrs. Rusling received $1,000 as her own separate estate; this she gave to her husband to invest for her and to pay to her the interest. I think he paid her the interest for the first year, after he accepted the trust which was thereby created. On December 5th, 1863, before the expiration of the first year after he received the $1,000, Mr. Rusling made his will. In this will he directed that all his debts should be paid; gave to his wife $120 yearly, so long as she remained his widow; gave her, also, the sum of $1,000 in cash, using this language:

"The same being the amount of certain moneys which I received from her of her separate estate after my marriage with her, and which said sum I direct to be paid to her by my executors within one year from the time of my death, with interest thereon from the time of my death. And I further direct that all the household goods and furniture, silver-ware, and personal property of every description, which she had of her own separate property at and after her marriage with me, be given to and taken by her as her own property."

On September 23d, 1865, Mr. Rusling made and published another will, differing in the particulars above named in no material respect except that he made the $120, $180.

It is a fact that some of the children of Mr. Rusling by a former wife were greatly displeased with Mrs. Rusling's presence in the household without sharing any of the burdens thereof out of her separate estate. From time to time they expressed their displeasure to her, but when, does not appear to any degree of certainty. It is insisted that in view of this dissatisfaction, Mrs. Rusling gave this $1,000 to her husband, and thereby, to that extent, contributed to the daily recurring wants. It will not be amiss to note that if she made any such donation, and Mr. Rusling so regarded it, it must have been after September 23d, 1865, the date of the last will named; for it will be seen that in that will he directed the $1,000 to be paid to her, with interest.

On January 8th, 1873, Mr. Rusling executed another will, directing all his just debts to be paid; giving to his wife $2,000, with interest from the time of his death, to be paid to her in one

year thereafter; directing his executors to pay to her, annually, from the time of his death, a sum equal to the interest of $3,000, and to invest a sum sufficient for that purpose; making the same direction, as in the former wills, with respect to her personal property, and declaring the said gifts to be in lieu of her right of dower; after which he made disposition of all the balance of his estate.

On October 4th, 1873, Mr. Rusling executed another will, in all material respects, so far as it affected Mrs. Rusling, like the one last referred to, except, in giving her the interest of $3,000, he gave her the interest of $4,000, and directed that such gifts be in lieu of "her right of dower or any other claim that she might have against my [his] estate."

During the year in which these last two wills were made Mrs. Rusling built herself a cottage at Ocean Grove, and for that purpose borrowed about $900 of her husband, which, shortly thereafter, she paid back to him. This was done without any claim on her part of $1,000 which she gave to him to invest in 1863, and without any accounting between them therefor.

On December 10th, 1874, Mr. Rusling made another will directing his just debts to be paid, saying, "if any I have;" giving to Mrs. Rusling the $2,000, as in the two former wills last mentioned, and the interest of $4,000 during her natural life if she should so long remain his widow, making the same directions as to her personal property, and declaring that such gifts should be in lieu of dower or any other claim against his estate, and disposing of all the balance of his estate.

The last will in the series, and which was admitted to probate, is dated January 4th, 1875, after which time Mr. Rusling lived about six years. In this will he directed "that all of my just debts, if any I have," should be paid. He gave to his wife $2,000 and directed it should be paid to her with interest from his death, in one year thereafter; gave to her the interest of $4,000, to be paid to her annually, during her life, if she so long remained his widow, directing that all her goods, silver-ware and personal property of every description should be taken by her as her own separate property, and adding:

"And it is my will, and I do hereby direct that the said bequests in favor of my said wife shall be in lieu and in bar of her right of dower or any other claim that she may have against my estate."

About the time of making these last wills, and before, Mr. Rusling said that his wife had brought him $1,000, and that he had invested it for her; that he had paid her one year's interest, and that he wanted her to have it after his death.

- After the making of these wills and after Mr. Rusling had said that he had this $1,000 from his wife, she said that she had given Mr. Rusling $1,000, and when the witness to whom she made the statement was asked if she gave any reason for so doing Mrs. Rusling replied that it was "to have peace in the family;" that "she had unpleasant times with them, *  *  * because she didn't bring anything in the family, and she gave him $1,000 to make peace, and afterwards," she said, "there was peace, they were satisfied." One witness says that Mrs. Rusling told this to her frequently. Another witness says that about the same time Mrs. Rusling told her that she had given Mr. Rusling $1,000, and that he had never given her a cent of interest. In 1876 or 1877 Mrs. Rusling told another witness that she had given her husband $1,000 in 1863 "to pacify him and his children," saying, "there existed a little unpleasantness in the family, *  *  * they had an idea that she ought to have brought something into the family as his other wives had done, and that in order to pacify them she gave him this $1,000." While it is true that Mrs. Rusling either denies making these statements, or says she does not remember them, all rules applicable in such cases require me to regard these alleged statements as established facts, the decided preponderance of testimony being against her.

From these facts the first question is, What relation was Mr. Rusling in to Mrs. Rusling, with respect to her separate estate, at any time during their married lives? One of his wills shows that he accepted from her the $1,000, and by the same will gave it back to her with interest from the time of his death. This will bears date December 5th, 1863, about six months after he received the money. This clause was retained in the next will,

dated September 23d, 1865. These unmistakable declarations, with the other undisputed facts, establish the relation of principal and agent, or what I think more nearly expresses the truth, of *cestui que trust* and trustee.

But it may be said that the gift of $1,000 in 1865, with interest from the death of the testator, will not satisfy the demands of a trust of $1,000, created two years or more before. Truly not; but it does not fail, any the less, to establish the relation of the parties. And, speaking with reference to this natural and logical criticism, I remark that the will is to be read as a whole; and so reading it, it is seen that while the $1,000 stands as before, the annuity, which in the first will was $120, is in the second increased to $180.

I conclude, therefore, that the relation of *cestui que trust* and trustee was established. The next question is, Was the obligation created by that relation discharged by the trustee in his lifetime, except as provided in his last will; or, if not discharged by him, was it released by Mrs. Rusling? It is important to observe that the trustee was the husband of the *cestui que trust*. This being the case, nothing short of clear and satisfactory proof will convince the court that the obligation has either been discharged or forgiven. I feel it my duty to say that ordinary expressions, importing a gift, or satisfaction, or discharge, provoked or called forth by dissatisfied members of the household, are wholly insufficient to justify the court in pronouncing judgment in favor of the trustee.

The fact that about ten years after the advance of $1,000 to Mr. Rusling, Mrs. Rusling borrowed of him about $900, to use in building herself a cottage, and soon thereafter paid it back to him, is, in the law, of much more significance. Ordinarily, under such circumstances, the creditor would require the debtor to account for the money already due, with interest, rather than become himself the debtor, by borrowing. But, as stated above, it cannot be forgotten that Mrs. Rusling was the wife, and however greatly the law has extended to her the privilege of asserting and maintaining her own rights in her separate estate, nothing is more certain or better known than that in multitudes

of instances the married woman confides and trusts the management of her affairs absolutely to the husband. With this view of the case before me, I cannot conclude that the obligation resting upon Mr. Rusling as trustee was, by that transaction of borrowing and repaying, discharged.

During the progress of the cause, it was insisted that the statute of limitations was a bar. If I am right in my conclusions, this view cannot prevail, since it has been declared many times that the statute is not a bar to trusts of this character. Besides this view, it may safely be said that Mr. Rusling not only stood in the relation of trustee, but also that of *bailee;* for he took this money to hold or to invest for Mrs. Rusling, and to pay her the interest; it not appearing that any stipulation was made as to the length of time he should hold it. Nor does it appear that she ever made demand for the money. I cannot conclude, therefore, that the statute has any application to this case. See *Boughton* v. *Flint, 74 N. Y. 476, 481, 482.*

I am brought now to the declarations of Mrs. Rusling, made long after she placed the money in the hands of Mr. Rusling, made five or six years after she borrowed the $900 of him, which she repaid without requiring him to account for the $1,000 and nine or ten years' interest then due thereon, and made three or four years after the execution of the last will of Mr. Rusling. Mrs. Rusling is a most highly respectable lady, and in every way worthy of credit; but it is difficult, according to the ordinary rules applicable to such cases, to disbelieve the other witnesses, and for the court to say that two, who appear to be truthful and to be disinterested, are less worthy of credit than one, who is much more advanced in years, and whose recollection would be much more likely to be influenced or clouded by her interest. I must, therefore, conclude that Mrs. Rusling said that she had given the $1,000 to her husband for the sake of peace.

In so deciding, I do not forget that one of the witnesses produced by the defendants said that Mrs. Rusling told her that she had given Mr. Rusling $1,000 to put out at interest for her. But it cannot be overlooked, as stated above, that two other wit-

nesses very distinctly stated that Mrs. Rusling told them repeatedly that she had given Mr. Rusling the $1,000 for the sake of peace.

But whether, as between husband and wife, this ought to be regarded as sufficient to discharge the husband from his trust, under the circumstances, is not clear to my mind, nor will I now pause to determine it, because of another view of the case, which must necessarily be considered. Mr. Rusling not only recognized this claim in his first will, but, as I understand the testimony, distinctly did so to two of the witnesses between the years 1870 and ·1876. And, in my judgment, although he did not name this particular sum, he recognized some claim of Mrs. Rusling against him, in his three last wills—one made in October, 1873, one in December, 1874, and the one which was proved in January, 1875—in each of which he directed that the bequests in favor of his wife should be in lieu of and in bar of her right of dower, or any other claim that she might have against his estate. The bequests referred to were the $2,000, payable one year after his death, with interest, and the interest on $4,000, payable during her lifetime. The testator declares these to be in lieu of dower, which all understand to have a certain definite meaning and application, and also in lieu of any other claim, which certainly must be understood as referring to something in the mind of the testator besides dower. It was aimed at an object. It was not an idle, careless, meaningless expression, interjected at random. The court cannot disregard it. If it be possible, every word and phrase must be assigned to some purpose. And the fact appearing that Mrs. Rusling once had this just claim, and there being no certain proof that it was ever satisfied or extinguished, the expression in the will, "or any other claim," will be applied to it; the court will say that the testator thereby intended to recognize this claim. I cannot escape the conclusion that some indebtedness must have existed and been recognized by the testator, which awakened in his mind and called forth this expression, just as certainly so as her right of dower prompted him to expressly provide and guard against her making claim therefor and also taking the legacies.

But the question remains, Did Mr. Rusling intend, by the gifts made, to discharge this claim ? Both as to the general rule of law in such cases, and the exceptions thereto, there is no controversy. The general rule is stated to be that a legacy will be presumed to be in satisfaction of a demand against the testator. Circumstances may arise, or facts may appear on the face of the will, showing a different intention. The intention of the testator is to govern. *Van Riper* v. *Van Riper, 1 Gr. Ch. 1, 3,* and cases there cited. A devise of land cannot be taken in satisfaction of a debt. If the testator declares that all his debts and *legacies* shall be paid, it is regarded as sufficient to overcome the presumption that he intended a legacy to be in satisfaction of a debt due from him. The presumption is likewise overcome, if the amount of the legacy be less than the debt, or, if the debt be unliquidated, or the legacy be not given to the creditor, but to a third person. See *Van Riper* v. *Van Riper's Exrs., supra; Reynolds* v. *Robinson, 82 N. Y. 103 ; Boughton* v. *Flint, 74 N. Y. 476 ; Chancey's Case, 1 P. Wms. 408 ;* and note at the end of the case found in *13 Eng. Ch. 118.* In *Phillips* v. *McCombs, 53 N. Y. 494,* it was said " the debt being due and the legacy being payable two years after the testator's death, no legal presumption arises, upon the face of the will, that the legacy was intended as a payment of the debt." Now, what appears upon the face of this will to guide me in this matter ? The testator does not say that all of " my just debts and *legacies* shall be paid," but says, " all my just debts, if any I have." The $2,000 given was payable in one year after the testator's death. These expressions, and the one above quoted declaring that the bequest and the annuity should be in lieu and in bar of dower or *any other claim,* are the only expressions which can aid me in ascertaining the intention of the testator, under the rules above presented. The $2,000 given was considerably in excess of the amount of principal and interest due at the date of the will, and also at the death of the testator, from which time the legacy drew interest, because of which it became impossible for the debt and interest to be equal to the legacy. This, I think, takes the case out of the rule laid down in *Phillips* v. *McCombs, supra.* And it seems

to me that the direction that the bequests in favor of his wife shall be in lieu of dower or any other claim, takes it out of the rule established, in many of the cases, that where the testator directs that all of his debts shall be paid the presumption is that it was not his intention that a legacy should be in satisfaction of a debt, and gives to the defendants in this case the benefit of the general rule. It seems to me it would not have been stronger if the testator had said that the bequests made to her were intended to " be in payment and discharge of any and every debt, claim or demand that she now has against me." It will strike the mind of every one that this case is not within the exception to the general rule which provides that when the testator says that his debts and *legacies* shall be paid, for, in this case, he only directs that his debts be paid, if any he have. *Edmunds* v. *Low, 3 K. & J. 318, 321; Lead. Cas. Eq. 777.* In this work I have found a more complete and useful analysis of the whole subject than elsewhere. See *Id. pp. 774 &c., 820 &c.*

I conclude that the testator was indebted to Mrs. Rusling at the time of making his last will, and that by his bequest therein of $2,000 he intended to satisfy and discharge such indebtedness. And the creditor, Mrs. Rusling, having accepted such bequest, she was not justified in filing her bill to enforce her claim. The bill must therefore be dismissed, with costs. I will so advise.