OLD COLONY TRUST COMPANY, receiver, *vs.* PURITAN MOTORS CORPORATION.

Suffolk. December 6, 1922. — March 2, 1923.

Present: RUGG, C.J., DE COURCY, CROSBY, PIERCE, & CARROLL, JJ.

*Contract,* In writing. *Trust,* What constitutes. *Receiver.*

A dealer in motor cars made with a corporation, which was a distributor for the manufacturer of certain cars, a contract in writing relating to selling the cars in a certain district, one paragraph of which was as follows: "The Dealer shall deposit and keep with the Distributor during the life of this agreement the sum of $500 as a guarantee for the satisfactory performance of the provisions hereof, and the Dealer authorizes the Distributor, without prejudice to any other rights the Distributor may have, to apply such portion of the said deposit or of any other money which the Distributor may have in the Distributor's

possession due the Dealer, by way of bonuses or otherwise, as the Distributor may consider reasonable indemnity therefor to the discharge or partial discharge of any liability arising under this agreement, to the Distributor, or to any other person, either liquidated or unliquidated. Said deposit shall draw interest at the rate of 5% per annum, and in the event any deductions are made by the Distributor as above provided, the Dealer shall immediately remit funds sufficient to restore the same to the original amount. At the conclusion of this agreement the amount of the Dealer's deposit remaining after all claims are satisfied shall be returned to the Dealer." A receiver of the distributor having been appointed, the dealer sought to have repaid to him in full the amount of the deposit of $500 above described. *Held,* that

(1) The foregoing provision of the contract was not ambiguous and oral evidence should not be received to vary its plain provisions;

(2) The provision quoted clearly did not have as its object the creation of a trust fund.

An express obligation to pay interest upon deposited money imports that the money may be used to earn money from which the interest may be paid, which increment from the use of the money would come to the depositor directly had the deposit not been made; and such an arrangement presumptively creates a debt as distinguished from a trust obligation.

The distributor corporation above described, at the time of the appointment of the receiver, had in its possession $645 which had been paid to it by the dealer on account of cars which he had arranged to buy for resale to his customers, and the dealer sought payment of this fund in full as a trust fund held for his benefit. It appeared that the account between the parties was in the nature of an open and mutual account current. There was no evidence that these payments amounting to $645 were ever kept separate in fact from the general assets of the distributor corporation or were ever expected so to be kept. *Held,* that

(1) In this Commonwealth it is not enough to show that trust property or the proceeds thereof went into the general assets of an insolvent estate and that an amount equal to such property or proceeds remains unexpended, but it must be shown that the trust property or its proceeds has passed into a specific property or fund which may be distinguished from the general assets;

(2) The dealer was not entitled to priority as to the $645.

BILL IN EQUITY, filed in the Superior Court on January 14, 1922, by the ancillary receiver, appointed by the United States District Court for the District of Massachusetts, of Lincoln Motor Company, a Delaware corporation, seeking the appointment of a receiver of Puritan Motors Corporation, a Massachusetts corporation.

Sydney R. Wrightington, Esquire, was appointed receiver. On May 26, 1922, Joseph F. Downey filed an intervening petition seeking to have paid to him in full from assets in the receiver's hands the sum of $500, deposited by him with Puritan Motors Corporation under the provisions of the contract described in the

opinion, and a further sum of $1,527.40, alleged to be held by that corporation as a trust fund for the benefit of the intervening petitioner.

An answer was filed to the intervening petition and the petition and answer were referred to a master. It appeared that the intervening petitioner had entered into a contract in writing, described in the opinion, as "Dealer" with the Puritan Motors Corporation as "Distributor" for the selling in cities and towns comprising a large part of Essex County of motor vehicles manufactured by Lincoln Motor Company, called 'in the contract the "Manufacturer." Material findings by the master and objections and exceptions to the report by the intervening petitioner and by the receiver are described in the opinion.

The petition was heard by *Morton*, J., by whose order an interlocutory decree was entered overruling the exceptions of the intervening petitioner, sustaining those of the receiver, confirming the master's report in other respects and adjudging that the claim of the intervening petitioner in the amount of $2,780.67 be allowed as a claim of a general creditor of the estate, not entitled to priority. Being of the opinion that such decree so affected the merits of the controversy that the matter, before further proceedings with respect to the claim of the intervening petitioner, ought to be determined by this court, the judge reported to this court for determination the question, whether such interlocutory decree was warranted.

*N. Barnett*, for the claimant.

*S. R. Wrightington*, receiver, *pro se.*

PIERCE, J. This case is before this court on a report of a judge of the Superior Court, after the entry of an interlocutory decree overruling the exceptions of the claimant and sustaining the exceptions of the receiver to the master's report upon the intervening petition of the claimant, and otherwise confirming the said report, and denying to the said claimant priority over other creditors.

It is agreed that "the original bill above entitled was a creditor's bill for the appointment of a receiver of the defendant corporation, that Sydney R. Wrightington was duly appointed receiver thereof and has assets in his possession for distribution, that the issues involved in the report . . . to the full bench . . . relate solely

to the intervening petition of a creditor, Joseph F. Downey, and that only the pleadings referred to in the said report need be printed."

The facts found by the master show that the claimant was a dealer in motor cars and was the Lynn representative of the Puritan Motors Corporation; that as such he had entered into an agreement with the Puritan Motors Corporation, a copy of which is attached to the claimant's specifications, and under paragraph "10" of this agreement had deposited with the Puritan Motors Corporation the sum of $500, which amount (interest having been waived), the claimant asked to be allowed as a preferred claim and paid in full. Said paragraph "10" reads as follows: "The Dealer shall deposit and keep with the Distributor during the life of this agreement the sum of $500 as a guarantee for the satisfactory performance of the provisions hereof, and the Dealer authorizes the Distributor, without prejudice to any other rights the Distributor may have, to apply such portion of the said deposit or of any other money which the Distributor may have in the Distributor's possession due the Dealer, by way of bonuses or otherwise, as the Distributor may consider reasonable indemnity therefor to the discharge or partial discharge of any liability arising under this agreement, to the Distributor, or to any other person, either liquidated or unliquidated. Said deposit shall draw interest at the rate of 5% per annum, and in the event any deductions are made by the Distributor as above provided, the Dealer shall immediately remit funds sufficient to restore the same to the original amount. At the conclusion of this agreement the amount of the Dealer's deposit remaining after all claims are satisfied shall be returned to the Dealer."

As regards the deposit of $500 in accordance with paragraph "10" above quoted, the master found (the evidence is not reported), that "there was no evidence offered before me that this deposit was kept separate from the general funds of the Puritan Motors Corporation, and no evidence was offered that the amount of said deposit or any part thereof ever came into the hands of the receiver." He further found from his interpretation of paragraph "10," and from testimony not reported, "that it was the intention of both parties that this deposit should be kept intact, and in the event of any deductions sufficient funds should be at

once remitted to keep the deposit at the specified amount, and except when reduced as provided in the contract, the entire deposit was the property of the dealer, subject to whatever legal claims might be brought against it by the distributor."

The receiver objected to the master's report, contained in the paragraph last above quoted, on the ground "that no evidence was offered before the master bearing upon the interpretation of the said clause 10 and that there is no ambiguity in the said clause 10, which would have warranted the consideration of oral evidence to interpret it;" and also to the statement considered as a ruling of law interpreting the said clause 10 "on the ground that the meaning of the said clause 10 read in the light of the remainder of the contract is not to establish a trust fund of $500 for the benefit of the said Downey or the bankrupt or both, of which the bankrupt should be trustee, but that it establishes the relation of debtor and creditor with respect to the said $500." The receiver duly excepted to the report for the reasons assigned in his objections.

Upon this branch of his case the claimant made objection to the statement of the master and to his refusal to expunge and strike from the report the following paragraph: "No evidence was offered that the amount of said deposit or any part thereof ever came into the hands of the receiver; and the burden being on the claimant, in view of his failure to sustain it, I am of opinion that he is not entitled to maintain his claim to recover the deposit as a preference. If, however, I am wrong in this view of the law, and it is not necessary that the fund should be kept intact or that the fund should be traced into the hands of the receiver, then I am of opinion, in view of the wording of the contract, that the claimant is entitled to maintain his claim of a preference." He also objected to the refusal of the master to rule that upon all the evidence "the deposit of $500 made by the claimant, was a trust fund and that the claimant should be entitled to priority and should be paid in full as a preferred claim." The claimant duly excepted to the master's report for the reason stated in his objections.

The master further finds that the claimant in addition to the deposit of $500 had an account with the Puritan Motors Corporation known as a "Car Account" and had made various payments on account of cars, which he had arranged to purchase, for resale

to his customers, and this amount he found to be $645.27. The claimant contended before the master that the balance due him represented by payments made on cars not delivered to him, namely, $645.27, should be treated differently from the price adjustments, and asked a ruling that such amounts should be "considered as trust funds, and as such should be entitled to priority and should be paid in full, out of the assets of the Puritan Motors Corporation." Upon evidence not reported the master found "the account between the parties was in the nature of an open and mutual account current, and that the claimant is not entitled to have the balance due him established as a preferred claim." The claimant duly excepted to the report of the master in this regard for the reasons stated in his objections thereto.

At the hearing in the Superior Court upon the exceptions the court "ordered, adjudged and decreed that the exceptions of the claimant, Joseph F. Downey, to the master's report on his claim be overruled and the exceptions of the receiver thereto be sustained, and that the master's report otherwise be confirmed, and that the claim of the said Downey as a general creditor of the estate, not entitled to priority, be allowed in the sum of $2,780.67." From this decree the claimant duly appealed.

The decree sustaining the exceptions of the receiver and overruling the exceptions of the claimant was clearly right. Article "10" is not ambiguous, and clearly does not have as its object the creation of a trust fund which the Puritan Motors Corporation, as trustee, shall hold separate and apart from its own funds, as an indemnity fund from which it may discharge any liability arising under the agreement to the Puritan Motors Corporation or to any other person either liquidated or unliquidated, — the motors corporation paying to the claimant interest thereon at the rate of five per cent per annum. The obligation to pay interest upon deposited money imports naturally that the money may be used to earn money from which the interest may be paid, which increment from the use of the money would come to the depositor directly had the deposit not been made. Such an arrangement presumptively creates a debt as distinguished from a trust obligation. If, however, we assume with the claimant that a trust was created notwithstanding the obligation of the trustee to pay interest upon the *res* without the right to use it as his own, subject

to the agreement, we think the decree that the claimant is not entitled to priority is right. The master finds that there is no evidence that the $500 was kept separate from the general funds of the motors corporation, and there is no evidence that the fund or any part of it was deposited in a bank or came into the hands of the receiver. In this Commonwealth it is not enough to show that trust property or the proceeds thereof went into the general assets of an insolvent estate and that an amount equal to such property or proceeds remains unexpended, but it must be shown that the trust property or its proceeds has passed into a specific property or fund which may be distinguished from the general assets. *Lowe* v. *Jones,* 192 Mass. 94, 101–103. *Hewitt* v. *Hayes,* 205 Mass. 356, 361, 362.

What has been said as to the necessity of tracing the $500 fund into a specific property or fund which can be distinguished from the general assets of the insolvent applies with greater force to the claim that the $645.27 is to be treated as a trust fund and as such entitled to priority and payment in full. There is no evidence reported that the payments amounting to $645.27 were ever in fact or were ever expected to be kept separate from the general assets of the motors corporation.

*Decree affirmed.*