## In re NEWARK SHOE STORES, Inc., et al.
### No. 6691.

District Court, D. Maryland.
April 20, 1933.

See also 2 F. Supp. 384.

Malcolm H. Lauchheimer (of Lauchheimer & Lauchheimer), of Baltimore, Md., for petitioners.

Reuben Oppenheimer (of Emory, Beeuwkes, Skeen & Oppenheimer), of Baltimore, Md., for trustees.

COLEMAN, District Judge.

The question here presented, which arises on petition of the managers of numerous chain stores operated by the defendant bankrupt companies, is whether these managers may claim priority in the bankruptcy proceedings for the repayment of money deposited by them with these companies, their employers, as a condition precedent to their employment as such store managers.

The material facts as disclosed by an agreed statement entered into between the trustees in bankruptcy and the claimants, are as follows: Each store manager—there having been about three hundred in all, distributed throughout a majority of the states —as a condition precedent to his employment, entered into a formal, written contract, pursuant to which he deposited with

the company, his employer, $200 to be "held by the employer as a guarantee fund for the faithful performance" on his part, of the covenants, etc., of the contract, and until breach or default. The contract provided that he should receive "interest on said sum at the rate of 6% per annum payable annually at the end of the fiscal year." Such interest was regularly paid from the date of deposit to the date of bankruptcy, or at least up to a short time prior thereto. In no case did the bankrupts receive a rate of interest as great as 6 per cent. from the banks in which they kept their accounts and in which the store managers' funds were placed. It was further provided that upon termination of the employment the money would be returned within ten days thereafter, together with any interest due, provided an audit of the store manager's account showed no breach of the contract of employment. In the event of any such breach, the company was entitled "to retain and apply the sum as liquidated damages for such breach."

These deposits were collected over a period of fifteen years; the method being that the individual deposit of each store manager was received by a field employment agent of the company, and was either remitted directly to the company's central office or temporarily deposited in a local bank at the place of employment, to the credit of the company. In either event, the deposits were not kept in separate accounts, but commingled with other deposits of the company. At no time were combined bank accounts of the bankrupts, of which there were four at the time of bankruptcy, two in Baltimore, one in New York, and one in Philadelphia, less than approximately $68,000.

The contention of claimants is that they are entitled to priority on either one of two grounds: (1) That the deposits are in the nature of trust funds to which the bankrupt companies did not obtain any beneficial title; and (2) that these deposits are entitled to priority on general equitable principles. The trustees, however, contend, first, that no trust ever arose with respect to these deposits; and, second, that, even if it did, claimants have not sufficiently traced the funds to entitle them to any priority in these proceedings.

■ First, with respect to whether the deposit of the guaranty fund created a trust or something in the nature of a trust, it is too well settled to require citation of authorities that there can be no trust if there is no intention to create one, and, further, the fact that interest at a fixed rate is stipulated to be paid upon a deposit is prima facie, but not necessarily, conclusive evidence that the transaction is a loan, namely, that the relationship of debtor and creditor, and not that of trustee and cestuis que trust, is created. In the present case the intention of the parties, in so far as it may be gleaned from the terms of the formal contract, remains ambiguous. The fund is spoken of as a "guarantee fund," but its use by the company was unrestricted. Furthermore, there are at least two situations in which the prima facie presumption that the payment of interest makes the transaction a loan may be rebutted. One occurs when the interest is merely a return to the depositor of what his money actually has earned while on deposit; and the other occurs when the one with whom the money is deposited receives something other than the right to use the money as his own, for which it is conceivable he might be willing to pay interest. In the present case, exactly what the deposits earned is not disclosed. In any event, it is reasonable to assume that a 6 per cent. charge is not excessive in return for the security or insurance given against the depositor's breach of the contract. On the other hand, the fact that the company used these deposits as its own for so many years instead of keeping them in a separate account, is very persuasive evidence that the transactions were considered as loans. But again the wording of the deposit agreement would seem to weaken the argument that, in so far as the depositors were concerned, they ever considered them as loans. Thus on the whole we conclude that there is more weight to claimants' argument that the deposits were in the nature of trust funds.

■ Turning to claimants' second contention, namely, that, regardless of what they may be called, the deposits should be refunded on general equitable principles, we find less support for this contention. It must stand or fall in accordance with the proper interpretation to be placed upon a single section of the Bankruptcy Act which applies to the present situation, to wit, section 64 (b) (5), 11 USCA § 104 (b) (5), which is as follows: "The debts to have priority, except as herein provided, and to be paid in full out of bankrupt estates, and the order of payment shall be * * * (5) debts owing to any person who by the laws of the States or the United States is entitled to priority."

■ Because of the fact that these contracts were entered into by so many different store managers in different states, questions of

conflict of laws may be involved. But, since the evidence before the court is embraced in the agreed statement of facts, which includes neither a statement as to where the various contracts were executed, nor whether there is any variation in the law of the different states where they may have been executed, on the question here in issue we must conclude that there is no special law affecting the situation in any particular state. Were the contrary true, the right to priority would have to be determined by the law of such state, rather than by the law of Maryland, the situs of the bankruptcy proceedings. See In re Ireland (D. C.) 4 F.(2d) 813.

Claimants, however, would have us apply the seemingly anomalous doctrine laid down in a somewhat similar situation, in the case of Pintsch Compressing Co. v. Buffalo Gas Co., 280 F. 830, a decision of the Circuit Court of Appeals for the Second Circuit. There the depositors were customers of a public service company which had a monopoly in the distribution of gas. Thus, if they wanted gas, they had to comply with the company's terms. Furthermore, the local law authorized the requiring of the deposit by the consumer as a condition precedent to his being supplied with gas. In affirming the finding of the District Court that deposits so made were entitled to priority, the appellate court said, page 840 of 280 F.:

"Here the consumer has no choice (Hewsey v. Queens Borough Gas & El. Co., 47 Misc. 375, 93 N. Y. S. 1114), for, before he can obtain gas, he is compelled to make a deposit 'as security.' On the other hand, the requirement of the statute that the gas companies shall pay interest is some support for the contention that such corporations are authorized not to treat the deposits as inactive moneys, but to use them in their business, and hence to mix these deposits with general funds. Thus the case is sui generis. * * *

"Courts of equity have marshaled assets and assigned priorities in response to equitable requirements and business necessity, as is illustrated by the now well-established principle that preference will be accorded to claims for materials and supplies furnished to public utilities for current operation within a limited period prior to receivership. The fact that, because of statutory permission, such deposits are not made as the result of voluntary agreement, but compulsorily required as a condition of supplying gas, is sufficient to justify a court of equity in treating them as preferred claims."

Assuming, without agreeing, that there was ground for extending the equitable doctrine to the facts in the aforegoing case in New York, the situation now before us is obviously different for there is no such public interest involved in the continuous operation of a chain of shoe stores. Such is not a monopoly; neither the public nor third parties are interested in the relationship between the local manager and the company. Public policy is thus not involved as it is in the case of a public utility. Therefore it would seem improper to extend the doctrine of the Pintsch decision to the present case, even as to such of the store manager's contracts as may have been made in New York. It is significant that we have been cited to no other case, nor have we found any, which thus extends the equitable doctrine.

Having decided that claimants' first contention is meritorious, namely, that the deposits are in the nature of trust funds, although not, as we have just shown, entitled to priority on so-called general equitable principles, it still does not necessarily follow that all or any of the deposits should be refunded. No deposit can be, unless, at the present time, it is definitely traceable into one of the company's bank accounts, and only if it can be shown that such bank account has never been less than the amount of such deposit and that the funds in that account have come into the hands of the trustees in these bankruptcy proceedings. See St. Louis Railway v. Spiller, 274 U. S. 304, 47 S. Ct. 635, 71 L. Ed. 1060. See, also, Harmer v. Rendleman, Receiver, 64 F.(2d) 422.

The apparent hardship of the ruling herein announced is regrettable, but courts may not, without warrant, extend the clearly defined limitations of the Bankruptcy Act and create preferred creditors, in derogation of the rights of general creditors.