No. 15,012.

STATE OF COLORADO ET AL. *v.* GROOMS ET AL.

(133 P. [2d] 379)

Decided January 11, 1943.

Mr. GAIL L. IRELAND, Attorney General, Mr. H. LAW-RENCE HINKLEY, Deputy, Mr. BURTON T. GOBBLE, Assistant, Messrs. STONE, PORTER & STEWART, for plaintiffs in error.

Mr. PAUL L. LITTLER, for defendants in error.

*En Banc.*

MR. JUSTICE FETZER delivered the opinion of the court.

THIS litigation arises over a decree of heirship entered by the district court adjudging that Edgar Lorenzo Miller, who died intestate October 1, 1937, left as his only heirs at law, defendants in error; to review which decree the State of Colorado and B. F. Cummings, administrator, have sued out a writ of error.

September 19, 1938, Philetus L. Miller of Syracuse, New York, filed in the county court of Gunnison county, his petition for determination of heirship setting forth that he was a first cousin of the deceased. November 17, 1939 Paul L. Littler filed a claim, as attorney for defendants in error other than Edward Wentworth, in which it was set forth that they were the heirs at law of deceased. February 1, 1940 Paul L. Littler, as attorney, filed a verified claim alleging that Edward Wentworth was the nephew of deceased and a son of Catherine Sarah Miller Wentworth, to whom we hereinafter refer as "Catherine." Upon the matter of determination of the heirs of deceased on the petition of Philetus L. Miller, the county court found that none of the testimony established a relationship of the petitioner or claimants to deceased, decreed that deceased died intestate, and that claimants and petitioner are not the heirs of deceased.

266

From this decree Jennie Grooms, Kenneth Wentworth, S. Jessie Wagner, Lois Wagner, Vera Catherine Haines, LeGrand Chesney Wentworth, and Edward Wentworth prosecuted an appeal to the district court. Philetus L. Miller did not appeal. The evidence clearly indicates that he was not an heir.

The State of Colorado appeared, to protect the rights of the state under the law providing for an escheat to the state under section 230, chapter 176, '35 C.S.A., which provides, inter alia: "If any heirs * * * are unknown, * * * the administrator or executor shall * * * pay any balances remaining in his hands to the state treasurer, and * * * the state shall be answerable * * * any time within twenty-one years * * * to such person or persons as shall appear to be legally entitled to the same, * * * . After the lapse of twenty-one years * * * no claim therefor having been made and established by any person entitled thereto, said moneys shall * * * be transferred to the public school fund * * * ."

All of the evidence in the record is documentary and by deposition except the testimony of one witness, namely Joseph Blackstock, which in no way aids defendants in error. He testified that he had lived in Gunnison for sixty-one years, had been acquainted with deceased since 1883 and was intimately acquainted with him for the last thirty or forty years; that deceased had told him that his mother had raised him until he was about thirteen years of age; that he spent his boyhood "in New York, Buffalo, on the Erie Canal and Canostata"; that he never told the witness his mother's name. The following questions and answers appear in the record of his testimony: "Q. Did he have any brothers and sisters? A. Not that he told me about. Q. Did he ever tell you he had none? A. No, he told me he had no folks."

■ Since the foregoing evidence by the only witness produced in the district court in no wise sustains its finding and decree, we are free to "examine the en-

tire record, sift all the evidence adduced, with the view of arriving at the truth." *Rittmaster v. Brisbane,* 19 Colo. 371, 375, 376, 35 Pac. 736; *Gianella v. Haffner,* 93 Colo. 449, 452, 26 P. (2d) 817.

The record discloses that the name of deceased was Edgar Miller; he was born about 1853; his childhood was spent at Canostata, New York; that he had not married; that he left no children or issue surviving and no mother or father living. Defendants in error base their claim on the fact that they are lineal descendants of Catherine, whom they claim was a sister of deceased.

S. J. Miller was a witness on behalf of defendants in error in the county court and because of his death prior to the trial before the district court, his transcribed testimony was admitted. From this it appears that he was not related in any way to the deceased; that he had known him since about 1888 or 1889; estimated his age in 1889 to have been fifty-five years (which would have made deceased 103 years of age at the time of death); that decedent corresponded with someone in New York State, and in answer to the question as to who the correspondent was, said: "His sister, the way I understood it"; that was in the eighties; that decedent's mail was placed in the witness' letter box; that witness never examined any of the letters; he did examine the postmark and recalled that it was "New York State," but did not know the town; that he did not know the name of the sister; that decedent was kind of an orphan boy; that all he knew was just what deceased had told him.

The deposition of Mrs. Blanche Wentworth Rogers of South Otselic, New York, contains the information that her father was Edward Wentworth, whose parents were John Chester Wentworth and Catherine; that her father's father told her that her grandmother had been brought up by a Dalrymple family and that he became acquainted with her on the Old Erie Canal; that the grandmother's brother's name was not mentioned;

that she had a Wentworth family bible, which was introduced in evidence; that she did not know who were the parents of Catherine; that she did not know of her own knowledge whether Catherine had any brothers or sisters; that Catherine, according to the data written in the bible, was born June 10, 1838 and died March 4, 1899. The family bible contains data on members of the Wentworth family, but contains no entry showing any relationship between Catherine and deceased, or the parents of either.

From the deposition of Luella Wentworth Clossen, it appears that she lives in South Otselic, New York; has been married twice, first to Charles Wentworth June 20, 1889, who died January 20, 1920; that he was the son of John Chester Wentworth and Catherine. The testimony is very much the same as that of Blanche Wentworth Rogers. Deponent did not remember having heard the name of the brother of Catherine mentioned. She did not know who the parents of Catherine were and had no knowledge as to whether she had any brothers or sisters. She stated: "From the research, I believe she was the sister of Edgar Lorenzo Miller." No research is disclosed.

Maude Wentworth in her deposition stated that she lived in Frankfort, New York, had married Edward Wentworth January 25, 1920; that her husband had been in the State Hospital at Utica, New York for two years; that her husband had told her that his mother had told him that her parents died when she, Catherine, was hardly old enough to make her own living; that she had no sisters and only one brother, whose name was Edgar Miller; that Edgar was just an infant when her parents died; that she went to live with a Dalrymple family; that her brother was taken by another family and that she lost track of her brother; that some of the statements might have been made by her husband's father instead of by her husband. In answer to the interrogatory: "Do you know whether she [Catherine] had any brothers or

sisters?" she stated, "Yes, one brother, Lorenzo Miller." To the question, "If you do so state, can you give their names, dates and places of birth?" she replied, "No."

In his deposition Curt Thornton states that he is an investigator for W. C. Cox & Co., of Chicago, which company makes a business of searching for unknown heirs to estates; that he had worked on the estate of the deceased and attached the original letter from his company to Mr. Willis Phelps at Canostata, New York, of date January 27, 1939, inquiring as to the heirs of Edgar L. Miller, to which Willis Phelps answered that letters had been coming to Canostata for a year seeking anyone who ever knew Edgar L. Miller and that no one seemed to know anything about his people; that an Ed Miller left Canostata over fifty years ago; that he, Phelps, had always lived in Canostata but could not give information concerning Miller.

■ From the above, the most that can be said in favor of defendants in error is that some of the witnesses had heard that Catherine had a brother referred to as Edgar; that she had married someone whom she had met along the Erie Canal (which canal is three hundred sixty-three miles in length); that the deceased told S. J. Miller that he corresponded with a sister in New York State. Such evidence fails to establish that the deceased and Catherine Sarah Miller were brother and sister and that defendants in error are heirs of deceased. While it is presumed that one leaves heirs and the proving of heirship often involves great difficulties, sufficient evidence is required to satisfy the court that claimants are so related to him, and are his heirs. The evidence must be clear and convincing and consist of more than mere conjecture.

"In proceedings to determine heirship, the evidence must be sufficient as in other cases. To establish a right as heir or distributee, there must be a preponderance of, or clear and convincing, evidence that intestate is dead, that claimants are his heirs or next of kin, and that

there are no other persons entitled before them." 26 C.J.S. 1130.

Judgment is reversed and the case remanded with instructions to the district court to enter the proper orders directing the county court to pay the net balance in the estate into the state treasury in accordance with the law.