## No. 14,980.

### ESTATE OF SEDDON.

### SEDDON ET AL. *v*. STATE OF COLORADO.
(136 P. [2d] 285)

Decided March 29, 1943. Rehearing denied April 19, 1943.

Mr. GEORGE M. GIBSON, for plaintiffs in error.

Mr. GAIL L. IRELAND, Attorney General, Mr. H. LAWRENCE HINKLEY, Deputy, Mr. BERTON T. GOBBLE, Assistant, for the state.

*En Banc.*

MR. JUSTICE KNOUS delivered the opinion of the court.

SAMUEL T. SEDDON died intestate in El Paso county April 25, 1926, with no spouse nor descendants surviving him. At the time of the final settlement of his estate, which was administered in the county aforesaid, no person claiming to be an heir having appeared, the county court ordered the administrator to pay the balances in his hands, property of the estate, which amounted to $3,531.15, to the state treasurer pursuant to the escheat statute, chapter 176, section 230, '35 C.S.A., with which order the administrator complied. April 16, 1936, William Seddon of Lancaster, England, and Andrew Seddon of Liverpool, England, plaintiffs in error, to whom we hereinafter refer as petitioners, filed in said county court a petition alleging that they and their five living brothers and sister and the children of a deceased half-brother, whom we shall call the claimants, were the heirs of said decedent, and prayed that the money theretofore paid to the state treasurer as aforesaid, be awarded to them. The county court, in an original hearing, and the district court in a trial de novo upon appeal, successively found the evidence insufficient to establish the claim of petitioners and so adjudged. Petitioners, who

prosecute this proceeding in error, contend that the evidence adduced was sufficient to establish the allegations of their petition and seek a reversal of the district court judgment solely upon such ground. Except for the testimony of one witness, which related principally to the identification of a certain bible and entries as to family pedigree therein, the claimants' evidence consists of stipulated facts, documents and depositions received without objection. The state introduced evidence to the effect that subsequent to the passing of his sister decedent had stated to the two witnesses testifying that he had no living relatives whatsoever. It is uncontroverted that Robert Isaac Seddon, a carver and gilder by trade, father of the intestate, was born in Liverpool, England, married there in 1848, and immigrated to the United States between the latter date and 1850. He died in 1868 and his widow departed this life in Denver in 1894. Two children were born of this marriage: Elizabeth C. Seddon, a spinster, who died in Colorado Springs in 1925, and the intestate who passed away there in 1926. All parties acknowledge that the above mentioned Robert Isaac Seddon, the father of the intestate, was the son of Thomas Seddon (1781-1839), a shoemaker of Liverpool, England, and Elizabeth (1780-1846), his wife. To establish consanguinity with this lineage the petitioners assert that their father, one William Seddon, was the illegitimate son of one Richard Holt and an Ann Seddon, who they claim was the daughter of Thomas Seddon, the shoemaker, and thus the sister of the father of the intestate. The state, by which appellation we shall designate defendant in error, concedes that claimants are descendants of William Seddon, but contends that petitioners' evidence was insufficient to prove either that such William Seddon was the son of Ann Seddon or that she was the daughter of Thomas, the shoemaker.

Escheats are not favored by law, but persons seeking the return of property escheated to the state as unclaimed have the burden of proving their relationship

to the decedent as a prerequisite to securing such property. See, 30 C.J.S., p. 1189, §21(b), and *Danks v. Herrmann,* 94 Colo. 546, 31 P. (2d) 912. In *State v. Grooms,* 110 Colo. 264 (133 P. (2d) 379), we said; "While it is presumed that one leaves heirs and the proving of heirship often involves great difficulties, sufficient evidence is required to satisfy the court that claimants are related to him, and are his heirs. The evidence must be clear and convincing and consist of more than mere conjecture." See, also, 26 C.J.S., p. 1130, §81(d). Despite the attendancy of these favorable presumptions, a consideration of the record convinces us that claimants' pretensions of relationship with the decedent are grounded more upon a series of conjectural surmises, burnished by ingenious argument, than upon legitimate inferences from the actual evidence adduced.

Photostatic copies of portions of Gores Directory of Liverpool, England, for the years designated, list the name of Ann Seddon as follows:

| "Year | Name | Address |
|---|---|---|
| 1834 | Ann Seddon, shopkeeper | 48 Jordan |
| 1851 | Ann Seddon, beer house | 70 South St. |
| 1855 | Ann Seddon, beer house | 69 South St. |
| 1857 | Ann Seddon, lodging house | 19 Hawke |
| 1859 | Ann Seddon, lodging house | 23 Vaughan St. |
| 1860 | Ann Seddon, lodging house | 23 Vaughan St. |
| 1862 to 1872 | Ann Seddon, beer house | 128 Wolf St." |

The death certificate of Thomas Seddon, the shoemaker, grandfather of Samuel Seddon, with whose estate we are concerned, shows that he departed this life at 29 Hill street, in 1839. The Liverpool directory lists a Thomas Seddon, at 30 Blake street in 1832; at 33 Blake street in 1834, and at 81 Hill street in 1839. The marriage certificate of the father of decedent in the present case, Robert Isaac Seddon, gave his residence as Hawke street. The Liverpool directory lists Robert Seddon, a watchmaker, as residing at 48 Jordan street in 1837, and at 19 Hawke street in 1839, and in 1849 it

carries the name Robert Seddon, watch-case maker, and a Robert Seddon, trade undesignated, both as residing at the Hawke street address. These directories for 1834 list the name of Joseph Seddon, coal dealer, as residing at 48 Jordan street, and the 1855 edition lists a Margaret Seddon as residing at 19 Hawke street. A map of the City of Liverpool discloses that 19 Hawke street and 30 Blake street are adjacent premises, back to back, facing the two streets named. Hill street and Jordan street are in the general neighborhood, which is one of the dock sections of Liverpool. From the circumstance that it thus appears that both Ann Seddon and Joseph Seddon upon occasions lived at 48 Jordan street; that in 1855 Margaret Seddon lived at 19 Hawke street where Ann resided in 1857, and that in 1839 and 1849 Robert Seddon lived at the same address, all in the neighborhood of where Thomas, a shoemaker, also lived, petitioners insist that it must be inferred that Joseph, Margaret and Ann are brother and sisters of Robert, and so, children of Thomas, and also that Margaret and Joseph died without issue. While the identity of names and the similarity of addresses shown may suggest that there was some relationship between the persons named, we are satisfied this proof was insufficient to establish, as was the burden of petitioners, that the Ann of the directories was the sister of Robert, the father of decedent in the instant case. In *Aalholm v. People,* 211 N.Y., 406, 105 N.E. 647, it was expressly held that similarities in name and nativity were too common to be alone sufficient to prove lineal connection between a claimant and ancestors of the decedent. According to "Bardsley's Dictionary of English and Welsh Surnames," 1901 edition, the name "Seddon" is a common one and is well distributed over Lancashire, and has found its way into distant parts of the world. Consistently, in the Liverpool directory of 1834, there were listed *three* Thomas Seddons, all *shoemakers,* and *all* living within a few blocks of each other. The possibility that such listings may

have been for one individual operating three shops, as suggested by counsel for petitioners, is purely conjectural. In addition to the shoemakers Seddon, the directory lists other Thomas Seddons engaged as gingerbeer manufacturer and watchmakers. The fallibility of arriving at conclusions respecting relationships from similarity of names and identity of addresses is illustrated in this very proceeding by the circumstance that plaintiffs in error themselves in their original petition alleged that Margaret, now claimed to be the daughter of Thomas, was, in fact, his wife.

Speculative as is the theory of petitioners upon the foregoing branch of the case, more so, as we view, is the contention that their evidence shows that the Ann Seddon of the directories was the mother of their father, William Seddon. They introduced in evidence a birth certificate evincing that on March 9, 1843, a boy was born at Preston, in the county of Lancaster, England. The certificate designates the child as William Holt, the mother as Ann Seddon, 38 Oxford street, Preston, and the father as Richard Holt, a farmer. Petitioners claim that in reality the William Holt named in this birth certificate, was William Seddon, their father. Upon the basis of a comparison of the foregoing birth certificate, wherein the surnames of the father and mother do not correspond with a number of other certificates in evidence, in which the surname of the mother coincides with that of the father, and without other or further foundation petitioners assert it is established that William Holt was an illegitimate child. The marriage certificate of William Seddon, who twice entered wedlock, shows that he must have been born between January 2 and March 24, 1843, and it appears that in 1912, in an application for insurance, he gave the date of his birth as March 11, 1843, and the place thereof, Preston, Lancs. A son of his, one of the petitioners herein, testified that his father was always uncertain as to whether his birth was on the 9th or 11th of March. It was testified for

the petitioners that William Seddon informed his second wife, for divulgence after his death, that "his mother was never married." From this statement, plus the circumstance that he never spoke to his children of his parents and because of an assertion and omission in his two marriage certificates, hereinafter to be mentioned, petitioners conclude that their father was an illegitimate child. As a matter of family tradition it was related that William Seddon told his second wife "that his mother liked the drink" and "that he had suffered great hardship as a result of drink." These early experiences, petitioners say, are accountable for the alleged corroborative circumstance that he was a strong temperance advocate in his maturity. In effect, petitioners argue that they have proved from William Holt's birth certificate that he was an illegitimate child; that he was born March 9, 1943, at Preston, and his mother's name was Ann Seddon. The other evidence, they argue, proves that William Seddon was born at the same place and about the same time and that his mother was addicted to the use of intoxicating liquor. Ann Seddon of the directories was at one time listed as the keeper of a beer house, from which and without other proof, petitioners assume she "liked the drink." So, they contend, she is indubitably identified as being the mother of their father and he, therefore, must be William Holt of the birth certificate.

The conclusion that William Holt was an illegitimate child, the very premise of petitioners' argument, is not sound, since all presumptions favor legitimacy (10 C.J.S., p. 15, §3[a]), and the mere comparison of the forms of birth certificates here attempted, in the absence of other proof, is insufficient to rebut this presumption. Aside from the coincidence as to the time and place of birth of William Holt and William Seddon, which standing alone would not establish that they were one and the same person, there is nothing in this evidence from which their duality legitimately may be inferred. In-

dependent of the inherent weaknesses of this evidence, further proof adduced by the petitioners tends to affirmatively weaken the very inferences they seek to sustain. Illustratively, in the same conversation in which William Seddon told his wife that his mother was never married, he further stated that his mother was employed as a governess in the home of a doctor; that the doctor's son was William Seddon's father, and that he, William Seddon, thought his father "went away on a ship and died." It is somewhat difficult to picture Richard Holt, the farmer, the father of William Holt, as the doctor's son who went to sea, or the governess as the Ann Seddon who kept the beer shops and lodging houses of the directories.

Presumably based upon the statement of William Seddon, his marriage certificate (1866) named as his father Thomas Seddon, deceased. In 1873 when he remarried, the name of his father was not mentioned at all in his marriage certificate. Of course, if a Thomas Seddon was the father of William Seddon, petitioners' case is without foundation, as they claim Richard Holt was such parent. They account for the recital in the first marriage certificate by saying hypothetically that to conceal his illegitimate birth from his bride, William falsely stated the name of his father and in his confusion gave the name of his reputed grandfather instead. As petitioners' interpretation relative to the second certificate counsel say: "William Seddon in 1873, being wiser through experience, merely failed to name his father, instead, naming his grandfather. Thus he did not reveal to the world his secret as to his birth, he did not run the risk of perjury and he aroused very little, if any, suspicion. The falsehood of 1866 was the act of an impetuous youngster —the guarded failure to name the father in 1873 is the act of a person with some wisdom, gained from six years experience." In our view these explanations are both dubious and conjectural. Rather, we think it may be considered more simply that the first certificate recited

truly and that the omission in the second was no more than an omission.

The circumstance that recently one of the claimants informed one of the petitioners, who testified, that William Seddon once said "his grandpa Thomas Seddon was in the shoe shop business in Liverpool," is in no manner conclusive of consanguinity with our decedent's grandfather, when it is recalled the directories disclosed that several Thomas Seddons were engaged in this business. Further, it would seem this statement in some degree is inconsistent with the stressed tendency of William Seddon to not discuss matters relating to his parentage with his children.

For the reasons we have stated and because of other anachronisms upon which, in the interest of brevity, we do not comment, we are satisfied the evidence of petitioners was insufficient to establish their claim. In this view, beyond noting the incident, no occasion arises for our passing upon the weight to be given the state's testimony to the effect that the decedent, following the death of his sister, had made the statement that he had no living relatives whatsoever.

The judgment is affirmed.