THE STATE OF NEW JERSEY—BY WALTER D. VAN RIPER, ATTORNEY-GENERAL OF THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. THE AMERICAN SUGAR REFINING COMPANY, A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-RESPONDENT, AND THE COMMONWEALTH OF MASSACHUSETTS, INTERVENOR-CLAIMANT-RESPONDENT.

Argued November 14, 1955—Decided January 9, 1956.

288

Mr. *Harold Kolovsky*, Assistant Attorney-General, argued the cause for the appellant (*Mr. Grover C. Richman, Jr.*, Attorney-General of New Jersey, attorney; *Mr. Charles J. Kehoe*, Assistant Deputy Attorney-General, on the brief).

Mr. *Harris A. Reynolds*, of the Massachusetts Bar and Assistant Attorney-General of the Commonwealth of Massachusetts, argued the cause for the intervenor-claimant-respondent (*Mr. William R. Blair, Jr.*, attorney; *Mr. George Fingold*, Attorney-General of the Commonwealth of Massachusetts, and *Mr. George Luftman* of the Massachusetts Bar, on the brief).

Mr. *Josiah Stryker* argued the cause for the defendant-respondent (*Messrs. Stryker, Tams & Horner*, attorneys).

The opinion of the court was delivered by

JACOBS, J.   The State of New Jersey appealed to the Appellate Division from the judgment of the Chancery Division that dividends which had been declared many years ago by The American Sugar Refining Company, a New Jersey corporation, and had remained unclaimed by stockholders whose last known addresses were in Massachusetts, escheated to Massachusetts rather than New Jersey.   We certified New Jersey's appeal under *R. R.* 1:10–1.

The early common-law doctrine of escheat was confined to real property; it was an incident of tenure and related to the right of the lord to take for want of a tenant. *State v. Otis Elevator Co.*, 19 *N. J. Super.* 107, 108 (*Ch.* 1952), reversed 12 *N. J.* 1 (1953); 3 *Holdsworth's History of English Law* (*3rd ed.* 1923), 67.   Later it was extended to personal property which had no owner or whose owner or owner's whereabouts was unknown. *State, by Parsons, v. Standard Oil Co.*, 5 *N. J.* 281, 297 (1950), affirmed *sub nom. Standard Oil Co. v. State of New Jersey*, 341 *U. S.* 428, 71 *S. Ct.* 822,

95 *L. Ed.* 1078 (1951). *Cf.* 7 *Holdsworth's History of English Law* 495 (1926); 10 *Id.* 350 (1938); *Garrison, Escheats, Abandoned Property Acts and Their Revenue Aspects,* 35 *Ky. L. J.* 302 (1947). The New Jersey Legislature first asserted its sovereign power to appropriate such personal property within its borders by the passage of its Escheat Act of 1946 (*L.* 1946, *c.* 155; *N. J. S. A.* 2:53–15 *et seq.; N. J. S.* 2*A*:37–11 *et seq.*). That act provides that whenever personal property within the State remains unclaimed for the period of 14 successive years it "shall escheat to the state"; its constitutionality has been expressly sustained by the United States Supreme Court and is not in question here. *Standard Oil Co. v. State of New Jersey, supra.* Its definitions and terms are comprehensive and its reference to "any personal property within this state" includes unclaimed tangible and intangible property within New Jersey no matter where the last owners were last situated. Unclaimed dividends owing from a New Jersey corporation to its stockholders wherever located constitute property within this State within the contemplation of the Act. See *State, by Parsons, v. Standard Oil Co., supra. Cf. Security Sav. Bank v. California,* 263 *U. S.* 282, 285, 44 *S. Ct.* 108, 110, 68 *L. Ed.* 301, 306 (1923), where Justice Brandeis described unclaimed deposits in a local bank as "intangible property within the state" over which "the state has the same dominion that it has over tangible property." See also *Anderson National Bank v. Luckett,* 321 *U. S.* 233, 64 *S. Ct.* 599, 88 *L. Ed.* 692 (1944).

On January 14, 1949 the State of New Jersey instituted action under its Escheat Act against the defendant The American Sugar Refining Company, a corporation of New Jersey. Its complaint alleged that the defendant had in its possession "certain personal property which has escheated" to the State of New Jersey and sought discovery and, after hearing, a judgment escheating such property as came within the terms of the act. On January 24, 1949 the court entered an order providing for answer and discovery and directing that the defendant retain possession of the escheatable prop-

erty in its custody until further order of the court. On July 17, 1951 the defendant filed its answer which listed (among other matters) the last known addresses of the last known owners of unclaimed dividends payable between January 10, 1891 and January 14, 1935. The list contained 1,162 names of which 501 indicated last known addresses in Massachusetts; whether these were residences, places of business, or other addresses, is mostly undisclosed; some were post office addresses, others were in care of banks or other institutions or individuals, and still others were in municipalities without street addresses. Some individual claims were filed and honored by the court but there remained the sum of $8,235.45 unclaimed on dividends payable to persons with last known addresses somewhere in Massachusetts. It is this sum which is now in dispute, with New Jersey claiming it under its Escheat Act and Massachusetts, an intervening party under petition filed on October 20, 1952, claiming it under *chapter 200A* of *Massachusetts General Laws*.

About 18 months after the State of New Jersey filed its complaint, Massachusetts enacted *chapter 200A* of its *General Laws*; prior thereto there was no pertinent escheats legislation in effect in Massachusetts. Chapter 200A provides that dividends held "for the benefit of a person residing or having a place of business" in Massachusetts and unclaimed for 14 years or more shall be presumed abandoned and shall be surrendered to the State Commissioner of Corporations and Taxation. It provides further that property which has been surrendered to the Commissioner shall vest in the Commonwealth of Massachusetts and that the Commissioner shall thereafter transfer it or its proceeds to the Treasurer and Receiver General for placement in an abandoned property fund. Whenever such fund exceeds $100,000 the excess is then to be placed in the Old Age Assistance Fund. Any person claiming an interest in property surrendered to the Commissioner is authorized to establish his claim "at any time thereafter." The State of New Jersey contends that the Massachusetts statute is merely a custody rather than an absolute escheats law and that, in any event,

it unconstitutionally fails to satisfy due process requirements. *Cf. State v. Otis Elevator Co., supra,* 12 *N. J.,* at *page* 18. For present purposes, we accept the position advanced by Massachusetts that its enactment may be construed as an absolute escheats law and that it is not violative of any constitutional requirement. See *Anderson National Bank v. Luckett, supra.*

■ Almost three years after the State of New Jersey filed its complaint, the Legislature passed *chapter* 304 of the *Laws of* 1951. See *N. J. S.* 2A:37–29 *et seq.* This statute provides a method for taking custody of (and thereafter escheating) personal property when it has remained unclaimed for five successive years. It is admittedly an alternative method and has nothing to do with the proceeding in the instant matter. See *State, by Parsons, v. National Newark & Essex Banking Co.,* 31 *N. J. Super.* 246, 250 (*Ch. Div.* 1954); *State v. American-Hawaiian Steamship Co.,* 29 *N. J. Super.* 116, 122 (*Ch. Div.* 1953). *Cf. State v. Thermoid Co.,* 16 *N. J.* 274, 275 (1954). We find no merit to the contention advanced by Massachusetts that it may in some manner serve to delimit the scope of the original Escheat Act and that the State of New Jersey was under obligation to apply for an amendment of its complaint to seek relief under *L.* 1951, *c.* 304. It is true, as Massachusetts points out, that *L.* 1951, *c.* 304 contains a provision that when a proceeding to escheat personal property is pending under the original 14-year act it "may be amended at any time to include proceedings under the alternate method"; but as its very language indicates that provision was not designed to convert an absolute escheat proceeding under the 14-year statute into a custody proceeding under the short 5-year statute.

■ Massachusetts concedes that unclaimed dividends due from the American Sugar Refining Company to its stockholders have a *situs* in New Jersey sufficient to support the institution of proceedings for their escheat under *L.* 1946, *c.* 155, as amended (*N. J. S.* 2A:37–11 *et seq.*); in view of the Supreme Court's decision in *Standard Oil Co. v. State of New Jersey, supra,* it could hardly do otherwise. Although

the company does business in many states including Massachusetts, New Jersey is the only state of incorporation and the relations between it and its stockholders are derived from and rest upon the laws of New Jersey. As Judge Jayne stated in *State v. Standard Oil Co.*, 5 *N. J. Super.* 460 (*Ch. Div.* 1949), New Jersey is the state of "habitation or domicile" within the rule which affords jurisdiction over claims against the corporation at its domicile; he soundly indicated that the rule ought to have special applicability where the claimant's status has long been unknown:

"In an escheat proceeding such as this in which the residence, domicile, whereabouts and, indeed, existence of an owner of the *res* are unknown and the *res* is circumstantially presumed to be *bona vacantia*, the application of the general jurisdictional rule to the *situs* of an escheatable *res* within the class here described seems to be manifestly sensible, just, and pragmatical." 5 *N. J. Super.*, at *page* 476.

Similarly in *Amparo Mining Co. v. Fidelity Trust Co.*, 75 *N. J. Eq.* 555, 558 (*E. & A.* 1909), Justice Swayze, while recognizing that a stockholder's property right in his corporation is an intangible thing without physical *situs* "in the sense that real estate or tangible chattels have," nevertheless pointed out that it is the state of incorporation which can deal effectively with the shareholder's claim and may therefore be treated as its *situs*. In *Standard Oil Co. v. State of New Jersey, supra,* Justice Reed likewise noted that the *situs* of an intangible was fictional but that control over the corporation which was obliged to pay the dividends or other escheatable funds was real, at least in the state of incorporation; in the course of his opinion he said [341 *U. S.* 428, 71 *S. Ct.* 828] :

"Appellant is a corporation of New Jersey, amenable to process through its designated agent at its registered office. *N. J. Rev. Stat.* 14:4–1; 14:4–2, *N. J. S. A. Cf. State v. Garford Trucking, Inc.,* 4 *N. J.* 346, 72 *A.* 2d 851, 16 *A. L. R.* 2d 1407. This gave New Jersey power to seize the *res* here involved, to wit, the 'debts or demands due to the escheated estate.' And the fact that this is immediate escheat is not significant. Escheat is permitted against persons whose addresses or existence is unknown."

Massachusetts rightly points out that the *Standard Oil Co. case, supra,* dealt only with New Jersey's claim to escheat unclaimed dividends and other escheatable property possessed by a New Jersey corporation and did not concern itself with claims by other states to the same property. It contends that the stockholders whose last known addresses were in Massachusetts were and are domiciled there and that Massachusetts as the domiciliary state has "a superior right over that of New Jersey to final escheat." The burden of establishing the Massachusetts domicile rests with Massachusetts as the intervening claimant; on the record before us we believe that it has not carried its burden. See *State v. Otis Elevator Co.,* 10 *N. J.* 504, 510 (1952); *State v. Otis Elevator Co.,* 12 *N. J.* 1, 20 (1953). *Cf. In re Seddon's Estate,* 110 *Colo.* 528, 136 *P. 2d* 285 (*Sup. Ct.* 1943); 28 *Notre Dame Law.* 416 (1953). The last known addresses which were recorded on the books of the corporation had little relation to domicile; as Judge Taft aptly remarked in *Conner v. Miller,* 154 *Ohio St.* 313, 96 *N. E. 2d* 13 (*Sup. Ct.* 1950), a last known address may or may not have been a place of residence, let alone a place of domicile. See *State v. Garford Trucking, Inc.,* 4 *N. J.* 346, 353 (1950); *State v. Benny,* 20 *N. J.* 238 (1955). In the instant matter many of the last known addresses were obviously places other than residences and the remainder may or may not have been residences. Decades have elapsed since the dividends were declared in 1935 or prior thereto (some were declared as early as 1891) without any claims by their owners or any information whatever as to their owners' whereabouts. It seems more than likely that those who may originally have had Massachusetts domiciles terminated them long ago (*cf. State v. Western Union Telegraph Co.,* 17 *N. J.* 149, 158 (1954)); in any event it can hardly be said that there was any realistic showing that the interested stockholders were and are domiciled in Massachusetts. Compare *Note, Escheat of Corporate Dividends,* 65 *Harv. L. Rev.* 1408, 1414 (1952):

"The first objection to escheat to the state where the shareholder lives is that by hypothesis it is unknown. Usually there is no way

to tell whether the last known shareholder has died or sold his shares. Moreover, the current residence of even the last recorded owner may be unknown. Since a man who has remained in or near the same community can be more easily located than one who has moved a substantial distance, it is likely that the shareholder no longer resides in his old state. Thus there certainly seems no reason to assume that the state of the last known residence of the last known owner has any connection with the present shareholder. Indeed, it is even doubtful whether over a large number of cases the amounts escheated to the various states would be related to the number of shareholders residing in each state."

██ In furtherance of its contention that it has a superior right, Massachusetts asserts that it and not New Jersey has "an *in personam* jurisdiction over the owners of the dividends." Its assertion assumes that the dividend owners were originally domiciled in Massachusetts and that a presumption may be indulged in as to the continuance of their domiciles in Massachusetts. But, as has already been indicated, the acknowledged circumstances support neither the basic assumption of domicile nor the presumption of continuance. The incontrovertible fact is that the only established connection between Massachusetts and the last known owners of the unclaimed dividends is that their last known mailing addresses, recorded many years ago on the books of the company, were somewhere in Massachusetts. Realistically viewed, that connection is hardly as significant as that of New Jersey, which as the state of incorporation, always has had the comprehensive power to deal in New Jersey with the relations between the corporation and its stockholders, both resident and non-resident. See *Merola v. Fair Lawn Newspaper Printing Corp.*, 135 *N. J. Eq.* 152, 156 (*E. & A.* 1944); *Andrews v. Guayaquil & Quinto Railway Co.*, 69 *N. J. Eq.* 211 (*Ch.* 1905), affirmed 71 *N. J. Eq.* 768 (*E. & A.* 1906). *Cf. Standard Oil Co. v. State of New Jersey, supra.*

The corporation's right to declare dividends and their precise nature as trust funds were dependent upon New Jersey laws which could at any time be altered by the New Jersey Legislature, and in that event the certificate of incorporation

issued to The American Sugar Refining Company would correspondingly be altered. *R. S.* 14:2–9. We concern ourselves with substance and not form, and although New Jersey's Escheat Act did not take the form of an amendment to its general Corporation Act, it, in substance, became part of New Jersey's laws to which the company and its stockholders, in their relations with the company, became subject as though the certificate of incorporation had been expressly altered or amended. See *A. P. Smith Mfg. Co. v. Barlow,* 13 *N. J.* 145, 155, appeal dismissed 346 *U. S.* 861, 74 *S. Ct.* 107, 98 *L. Ed.* 373 (1953). When the last known owners of the unclaimed dividends purchased their stock they knowingly received the benefits of New Jersey's liberal corporation laws and they knowingly undertook a connection with New Jersey insofar as the incidents of their stockholdings were concerned; it seems to us that that connection may well be deemed more substantial than the tenuous one advanced here by Massachusetts. See *State Tax Commission of Utah v. Aldrich,* 316 *U. S.* 174, 180, 62 *S. Ct.* 1008, 86 *L. Ed.* 1358, 1370 (*Sup. Ct.* 1942).

Massachusetts also asserts that it has *in personam* jurisdiction over the company because it is registered there as a foreign corporation and has been doing business there. See *Connecticut Mutual Life Ins. Co. v. Moore,* 333 *U. S.* 541, 68 *S. Ct.* 682, 92 *L. Ed.* 863 (1948). That much may be conceded with the comment that many other states equally have jurisdiction over the corporation which does business throughout the United States. In contrast, New Jersey is the only state of incorporation and its *in personam* control is even greater, for in New Jersey the corporation is not only amenable to personal service, but its existence and continuance are there subject to extensive supervision and control. It must always maintain a principal office in New Jersey with an agent in charge upon whom process may be served (*R. S.* 14:4–2); it must maintain its stock and transfer books within the State (*R. S.* 14:5–1); and it must file an annual report in the office of the Secretary of State. *R. S.* 14:6–2. While The American Sugar Refining Company no

longer operates any refinery in New Jersey, it formerly did so, and is at liberty to do so again.

In the instant matter it must be remembered that New Jersey instituted its proceeding long before Massachusetts suggested any interest in the matter. When New Jersey filed its complaint in 1949 it clearly held and asserted an interest in the unclaimed dividends possessed by the company. See *State v. American-Hawaiian Steamship Co., supra. Cf. In re Melrose Ave. in Borough of the Bronx*, 234 *N. Y.* 48, 136 *N. E.* 235, 23 *A. L. R.* 1233 (*Ct. App.* 1922) ; *In re Apostolopoulos' Estate*, 68 *Utah* 344, 250 *P.* 469, 253 *P.* 1117, 48 *A. L. R.* 1322 (*Sup. Ct.* 1926) ; 30 *N. Y. U. L. Rev.* 731, 732 (1955). At that time Massachusetts held and asserted no interest whatever and it was not until much later that it passed its first abandoned property law. While the diligence of New Jersey may perhaps not be the controlling factor it is a consideration not to be ignored—"equity aids the vigilant." *Papp v. Metropolitan Life Insurance Co.*, 113 *N. J. Eq.* 522, 529 (*Ch.* 1933). *Cf. Harkin v. Brundage*, 276 *U. S.* 36, 43, 48 *S. Ct.* 268, 72 *L. Ed.* 457, 461 (1928) ; *State v. American-Hawaiian Steamship Co., supra*, 29 *N. J. Super.*, at *page* 136. New Jersey's quest for legitimate revenues to be used for the good of all of its citizens is in nowise to be condemned and its right to the unclaimed dividends is admittedly superior to that of the corporation which had custody but no moral or legal claim to their retention.

As the single state of incorporation and the one most intimately concerned with the relations between the corporation and its stockholders, New Jersey's right to the unclaimed dividends seems generally more substantial than that of the other states in which the corporation simply does business. Some of the practical considerations which have been advanced in support of the view that unclaimed dividends should generally escheat to the state of incorporation rather than to other states are expressed in the following quotations from the Note on *Escheat of Corporate Dividends, supra*, 65 *Harv. L. Rev.*, at 1418, 1419 :

"Escheat to the state of incorporation has the advantage of simplicity. There is no question as to the legal validity of the claim; there is no factual question as to the state which can make the claim. Consequently, there is no danger of multiple escheat and each corporation is subjected to the escheat laws and procedures of only one state. This state has provided the laws under which the company was formed, under which its internal affairs are largely regulated and by which the validity of its dividends is usually determined. This does not seem an insufficient service to justify a claim to this limited source of revenue, arising almost wholly out of the very relationships over which the state of incorporation is conceded to have pre-eminent control. * * *

Conclusion.—The rationale for the escheat of abandoned property supports payment to the state of the holder rather than to the state of the last known owner. In cases in which more than one state may make a claim through the holder, the choice between them should be designed to minimize uncertainty and expense in the collection process, since the value of the dividends held by each party is so small. It should also be designed to eliminate the possibility of multiple escheat, since the injustice of this is far clearer than the equities of the rival governments. On this basis, funds held by corporations should escheat to the state of incorporation rather than to the state of the business situs."

But cf. Shestack, Disposition of Unclaimed Property—a Proposed Model Act, 46 Ill. L. Rev. 48, 75 (1951); Note, Escheat of Corporate Stocks and Dividends, 27 Ind. L. J. 113 (1951).

In preferring the claim of Massachusetts to that of New Jersey, the Chancery Division took the position that the last known owners had "their last domicile, if you use the word loosely" in Massachusetts and that under the maxim mobilia sequunter personam (movables follow the person) Massachusetts as the domiciliary state was entitled to escheat the unclaimed dividends. We have already expressed our disagreement with the notion that Massachusetts had satisfactorily established that the last known owners were and are domiciled in Massachusetts; furthermore, we question the applicability of the maxim, described in Amparo Mining Co. v. Fidelity Trust Co., supra, 75 N. J. Eq., at page 559, as a legal fiction "which is not to be unnecessarily extended." Throughout his work on the conflict of laws, Professor Dicey criticizes the maxim as misleading and points out that

although it has been invoked in strict succession cases it has been rejected in *bona vacantia* cases where the Crown claims "not by way of succession but because there is no succession." See *Dicey's Conflict of Laws* (*6th ed.* 1949), 818. Similarly in his discussion of the subject, Professor Beale notes that when dealing with escheat the state of *situs* seizes the property as its own and that ordinary principles applicable to succession on death have little or no bearing. 2 *Beale, Conflict of Laws* § 309.1 (1935). See *Restatement, Conflict of Laws* §§ 309, 310 (1934); *Goodrich, Conflict of Laws* 504 (1949); 11 *Am. Jur.* 371 (1937).

In the leading English case of *In re Barnett's Trusts*, [1902] 1 *Ch.* 847, an Austrian died in Vienna without heirs and under Austrian law his property was confiscated as heirless. He left two annuities in England and the issue presented was whether England was entitled to their proceeds as *bona vacantia* or whether Austria was entitled to them as the domiciliary state. The court held in favor of England pointing out that the Crown was not taking by succession but on the contrary was taking because there was no one to take by succession. In *In the Estate of Musurus, Deceased,* [1936] 2 *All E. R.* 1666, Sir Boyd Merriman followed this decision and held that the Crown was entitled to personal property in England which had been left by a Turkish woman who had died intestate and without heirs; the claim of the Turkish Government, which was deemed comparable to the Crown's claim to the property as *bona vacantia,* was rejected. In the recent case of *Re Maldonado*, [1953] 2 *All E. R.* 1579, the court sustained a claim of the Spanish Government as against the Crown's claim to property as *bona vacantia*; however, the decisions in *Barnett's Trusts* and *Estate of Musurus* were in nowise disavowed and the court expressly found that the Spanish Government's taking was as a true heir under its succession laws and not in the nature of *bona vacantia* or escheat. While the distinction drawn by the court is far from satisfying it is entirely clear in the instant matter that Massachusetts' claim is not as a true heir but is in the nature of *bona vacantia* or escheat.

Although there is some diversity in the American decisions, most of them follow the principles enunciated in *Barnett's Trusts, supra.* In *In re Menschefrend's Estate,* 283 *App. Div.* 463, 128 *N. Y. S. 2d* 738 (1954), the decedent died in California; he had continuously resided there for 14 years and no heirs or next of kin were ever found. He had three bank accounts in New York City and the question presented was whether New York was entitled to them as abandoned property despite the claim thereto being asserted by the public administrator of Los Angeles County, California. In sustaining New York's claim the court pointed out that ordinarily New York, as the place of *situs,* would transmit the decedent's personal property to his domiciliary state for distribution under its laws of succession but that it would not do so where there were no heirs or next of kin to succeed to the estate; in such event it is to be "deemed property of the sovereign, where found" and to be escheated under the laws of New York. It fully approved the views expressed in *Barnett's Trusts* and rejected those seemingly to the contrary in *In re Lyon's Estate,* 175 *Wash.* 115, 26 *P. 2d* 615 (*Sup. Ct.* 1933). *Cf. In re Lloyd's Estate,* 185 *Wash.* 61, 52 *P. 2d* 1269 (*Sup. Ct.* 1936). See *In re Nolan's Estate,* 286 *P. 2d* 899 (*Cal. App.* 1955).

In *In re Rapoport's Estate,* 317 *Mich.* 291, 26 *N. W. 2d* 777, 782 (*Sup. Ct.* 1947), *certiorari* denied *State of California v. Michigan State Board of Escheats,* 332 *U. S.* 764, 68 *S. Ct.* 71, 92 *L. Ed.* 350 (1947), the decedent was domiciled in California and died intestate and without heirs or next of kin. He had a bank account, along with stocks and bonds, in Michigan and the issue presented was whether the property should be escheated under Michigan law or be turned over to the public administrator of Los Angeles County, California. The court held in favor of Michigan and in the course of its opinion discussed both the English and American precedents; it expressed the view that under the authorities the rule that intangible property follows the owner's domicile "while applying to distribution of personal estate, does not necessarily apply to escheated personal prop-

erty." In *In re Hull Copper Co.*, 46 *Ariz.* 270, 50 *P. 2d* 560, 563, 101 *A. L. R.* 664 (*Sup. Ct.* 1935), an Arizona corporation was being liquidated and had funds payable to non-resident stockholders who could not be located. While the court construed its general escheats statute to be inapplicable, it held that the funds should escheat to Arizona under a provision in its constitution which set up a school fund " 'from all unclaimed shares and dividends of any corporation incorporated under the laws of Arizona.' " In the course of its opinion the court stated that insofar as Arizona corporations are concerned "it clearly lies within the power of the state to regulate the disposition of unclaimed shares and dividends thereof."

The legal fiction that movables follow the person—*mobilia sequuntur personam*—arose in ancient times when conditions and social problems were wholly different from those prevailing today. While courts still continue its use, its force has been lessened, it has become encrusted with many exceptions, and its application is in nowise as rigid or uniform as it was in earlier days. See *Hutchison v. Ross*, 262 *N. Y.* 381, 187 *N. E.* 65, 89 *A. L. R.* 1007 (*Ct. App.* 1933); *Newark Fire Ins. Co. v. State Board of Tax Appeals*, 118 *N. J. L.* 525, 527 (*Sup. Ct.* 1937), affirmed 120 *N. J. L.* 224 (*E. & A.* 1938), affirmed 307 *U. S.* 313, 59 *S. Ct.* 918, 83 *L. Ed.* 1312 (1939). States generally invoke it as a matter of comity and "only when neither the state nor its citizens would suffer inconvenience from application of the foreign law." *Receiver of State Bank at New Brunswick v. First National Bank of Plainfield*, 34 *N. J. Eq.* 450, 453 (*Ch.* 1881). It is true that most states, though by no means all, still apply the law of the foreign domicile to determine the succession of locally situated personal property upon the death of the foreign domiciliary; but as Professor Page has pointed out, the reason for this is probably not the continuing force of the legal fiction but "to let all of the testator's personalty pass on his death as an entire mass, which can be done only by adopting some particular law for succession, whether testate or intesetate." 4 *Page, Wills*

(*3rd ed.* 1941), 704. *Cf. Goodrich, supra.* We have no special quarrel with the selection of the state of domicile as the single jurisdiction to determine succession of all of the decedent's personal property to his heirs or next of kin. Presumably that would accord with the decedent's wishes and in any event the result would appear to be practicable and just. But where there are no known heirs or next of kin and the domiciliary state seeks to escheat personal assets of the decedent located beyond its borders, the controlling considerations would seem to be to the contrary. There would be no genuine basis for supposing that the decedent preferred escheat to his domiciliary state rather than the state where his personal property was located or had its *situs,* and the sovereign right and power of the latter state to appropriate abandoned property within its borders for the benefit of its own citizens would seem to be more compelling than the extraterritorial claim of the former state. In any event, neither comity nor any compelling sense of justice with relation to the escheat policy of another state suggests that the courts of the state where the property was located or had its *situs* should reach out to defeat its own legislative escheat policy. *Cf. Moore v. Bonnell,* 31 *N. J. L.* 90, 94 (*Sup. Ct.* 1864) ; *Receiver of State Bank at New Brunswick v. First National Bank of Plainfield, supra.* See *Beale, supra; Goodrich, supra.*

We are satisfied that, in the light of all of the circumstances, the Chancery Division erred in adjudging that the unclaimed dividends escheated to Massachusetts rather than New Jersey and its judgment is accordingly:

Reversed.

*For reversal*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.

*For affirmance*—None.